UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GILBERT P. HYATT,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>JON W. DUDAS,<br><br>　　　　　Defendant. | Civil Action 04-1802 (HHK)<br>Civil Action 04-1138 (HHK)<br>Civil Action 04-1139 (HHK)<br>Civil Action 05-0310 (HHK) |

MEMORANDUM OPINION

Gilbert P. Hyatt brings these four civil actions against Jon Dudas, in his official capacity as Director of the United States Patent and Trademark Office ("PTO"), seeking review of decisions by the Board of Patent Appeals and Interferences ("Board") that affirmed the rejection of twelve patent applications. Before the court are the parties' submissions on a threshold question—whether the Board erred by reviewing twenty-one representative claims instead of reviewing all of Hyatt's approximately 2400 claims. Upon consideration of the parties' respective positions and the record of the case, the court concludes that, while the Board did not err by grouping claims, it improperly selected the representative claims for review.

I. BACKGROUND

A. Patent Application Requirements

An inventor seeking to obtain a patent must file a written application with the PTO. That application must include a specification of the purported invention, consisting of, *inter alia*, both a written description of the claimed invention and an enablement for that invention. 35 U.S.C. § 112, para. 1. To fulfill the written description requirement, a patent applicant must "convey

with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention." *Vas-Cath*, *Inc. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991). That is, a description need not describe exactly what the applicant claims as her invention, but it must convey to one with "ordinary skill in the art" that the applicant invented what is claimed. *Union Oil Co. v. Atlantic Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000). The application must also explain the "manner and process of making and using [the invention] in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same." 35 U.S.C. § 112 para. 1; *see also* 37 C.F.R. § 1.71(a). To meet this enablement requirement, "a patent application must adequately disclose the claimed invention so as to enable a person skilled in the art to practice the invention at the time the application was filed without undue experimentation." *In re Swartz*, 232 F.3d 862, 863 (Fed. Cir. 2000). "[A] 'reasonable' amount of routine experimentation," is allowed but "such experimentation must not be 'undue.'" *Enzo Biochem, Inc. v. Calgene, Inc.,* 188 F.3d 1362, 1371 (Fed. Cir. 1999). Additionally, "[w]hether claims are sufficiently enabled by a disclosure in a specification is determined as of the date that the patent application was first filed." *Id.*

At the end of the written description and enablement section of a patent application, a proper specification should conclude with a list of "claims," which identify the specific "subject matter" of the invention that the applicant regards as hers. 35 U.S.C. § 112 para. 2. A claim is a single-sentence description, usually divided into several paragraphs, of what an applicant believes to be her invention, setting the boundaries of the invention the applicant wishes the PTO to examine. Specifically, a single claim can be composed of multiple elements and/or limitations. Elements are the previously known physical components that make up the claimed

invention. Limitations, on the other hand, usually describe the claim's restrictions, or the interaction between or features of the claim's elements. An application may contain several claims, and each claim usually contains several limitations. In addition, several claims in a single application may share some of the same limitations. As a result, the PTO may reject several claims at once by rejecting a single, shared limitation.

An applicant may, if she wishes, add additional claims to an invention disclosed in an earlier application, provided that the earlier, or parent, application has not yet been issued or abandoned. These "continuation applications" rely on the same specification in the pending parent application and are entitled to the parent application's filing date.

## B. Patent Examination

After an inventor files her application, the PTO assigns the application to an Examiner who has the necessary technical competence. HERBERT F. SCHWARTZ, PATENT LAW & PRACTICE 10, 18 (3d ed. 2001). After examining the application, the Examiner sends the applicant an "Office action" which may grant or reject the claims. *Id.* at 18–24; *see also* 37 C.F.R § 1.104(a)(2). The applicant may respond by submitting, in writing, a reply that "distinctly and specifically points out the supposed errors in the Examiner's action and must reply to every ground of objection and rejection in the prior Office action." 37 C.F.R. § 1.111(b). "A general allegation that the claims define a patentable invention without specifically pointing out how the language of the claims patentably distinguishes them from the references does not comply with the requirements of this section." *Id.* If the Examiner and applicant cannot agree on the disposition of certain claims, the Examiner issues a Final Office action. *Id.* § 1.113. If the Final Office action rejects the claims in the application, the applicant may then appeal to the Board, 35

U.S.C. § 134(a), which is made up of a panel of three administrative patent judges, who will either sustain or reverse the Examiner's rejections. *Id.* § 6.

On appeal, the Board is entitled to group the applicant's claims by common ground of rejection, in accordance with PTO regulations, and review one representative claim from each group, unless the applicant meets her burden of assuring separate review of all claims. To assure the separate review of all of her claims, the applicant's brief to the Board must (1) contain a statement that her claims do not stand or fall together; and (2) explain why her claims are separately patentable. *See* 37 C.F.R. § 1.192(d)(7). If the Board sustains the Examiner's rejections, the applicant may appeal to the Federal Circuit under 35 U.S.C. § 141, or she may bring a civil action to overturn the Board's decision in this court under 35 U.S.C. § 145.

**C. Factual Background**

Hyatt is an electrical engineer who holds more than sixty patents on inventions in subject areas including microcomputers, computer memories and displays, and global-positioning systems. Between April and June 1995, Hyatt filed the twelve patent applications at issue in these four cases, which, combined, included approximately 2400 claims. Each of these applications was part of a series of continuation applications based on ancestor patents dating back to the early 1980s or before, and each was later amended to add hundreds of claims that were not claimed in the ancestor applications or in the application as filed in 1995. The Examiner ultimately rejected all of the claims in Hyatt's applications. The most common basis for rejection was that the amended claims were not adequately described in the earlier-filed application. According to the PTO, this requirement—the written description requirement—is particularly important where, as here, "the patent claims are written years after the original patent

application was filed, as the written support must be in the application as originally filed." Pl.'s Br. at 5. The PTO also rejected some of Hyatt's claims for lack of enablement and for obviousness.[1] Hyatt appealed these rejections to the Board.

For each rejected application, Hyatt filed an appeal brief and the Examiner thereafter filed a responsive brief. For two of the twelve applications, the Examiner provided Notices of Non-Compliance indicating that Hyatt had failed to meet the requirements of the PTO regulation governing the grouping of claims on appeal. The Notices also provided Hyatt a chance to cure these deficiencies by submitting supplemental arguments, which Hyatt did.

Following appellate briefing, the Board issued an opinion in each case, rejecting Hyatt's patent applications. Rather than review the hundreds of claims independently, the Board determined that it was "free to select a single claim from each group of claims subject to a common ground of rejection as representative of all claims in that group and to decide the appeal of that rejection based solely on the selected representative claim." *See, e.g.*, Pl.'s Mot., Ex. 16 (Decision on Appeal for the '728 application), at 6; *id.*, Ex. 17 (Decision on Appeal for the '072 application), at 4–7; *id.*, Ex. 18 (Decision on Appeal for the '361 application), at 4–7. Focusing solely on twenty-one representative claims, the Board sustained the Examiner's rejections and, accordingly, denied Hyatt's applications. Hyatt thereafter filed four § 145 actions in this court that encompass all twelve patent applications at issue.

---

[1] The rejections for obviousness were based on 35 U.S.C. § 103(a), which provides that "[a] patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

## II.  ANALYSIS

The issue before the court involves the propriety of the Board's grouping of Hyatt's claims.  Hyatt first argues that he met the necessary requirements to prevent the grouping of his claims on appeal and that the Board erred by failing to consider all his claims.  Alternatively, assuming the court were to disagree, Hyatt contends that the court should nonetheless consider all his claims for two reasons: (1) because the PTO assertedly waived its right to challenge Hyatt's compliance with the regulations in ten of the twelve applications at issue; and (2) because equity compels such a result.  Finally, Hyatt argues that, assuming that grouping of claims was appropriate, the Board failed to group his claims properly.  The court addresses each of these four arguments in turn.

### A.  Compliance with 37 C.F.R. § 192(c)(7)

PTO regulations govern the propriety of grouping claims on appeal.  The former version of the relevant regulation—and the one that governs this litigation[2]—provides:

> **Grouping of Claims**.  For each ground of rejection which appellant contests and which applies to a group of two or more claims, the Board shall select a single claim from the group and shall decide the appeal as to the ground of rejection on the basis of that claim alone unless a statement is included that the claims of the group do not stand or fall together and, in the argument under paragraph (c)(8) of this section, appellant explains why the claims of the group are believed to be separately patentable.  Merely pointing out differences in what the claims cover is not an argument as to why the claims are separately patentable.

37 C.F.R. § 1.192(c)(7) ("Rule 192(c)(7)").

---

[2] 37 C.F.R. § 1.192(c)(7) was replaced by 37 C.F.R. § 41.37(c)(1)(vii), effective September 2004.  However, the former rule was applicable when Hyatt filed his appellate briefs in 2000–2001 and accordingly will be the focus of this discussion.

In *In re McDaniel*, the Federal Circuit discussed Rule 192(c)(7) in detail and explained that the grouping of claims "operates to relieve the Board from having to review—and an applicant from having to argue—the myriad of distinctions that might exist among claims, where those distinctions are, in and of themselves, of no patentable consequence to a contested rejection." 293 F.3d 1379, 1383 (Fed. Cir. 2002). The rationale underlying the grouping of claims as permitted by Rule 192(c)(7) is that "[i]f the applicant's commonly applicable reasons for patentability have merit, the rejection of both claims will be overcome, quite apart from any patentable distinctions that exist between the claims." *Id.* Therefore, according to the Federal Circuit, Rule 192(c)(7) "acts as the default that permits the Board to designate one claim to serve as a representative of others in a commonly rejected group and to focus its attention on only those matters that are dispositive of the appeal." *Id.*

Under the regulation, the Board will group claims "unless applicant overcomes the default to assure separate review of individual claims." *Id.* Thus, the Federal Circuit has interpreted Rule 192(c)(7) to create a presumption that claims will be grouped together on appeal based on a common ground of rejection and that this presumption can only be overcome if the appellant meets her burden of demonstrating that each claim should be addressed separately. According to the text of Rule 192(c)(7), that burden requires the appellant's brief to meet two conditions: (1) it must contain a statement that the claims do not stand or fall together; and (2) it must explain why claims are separately patentable. *Id.* (citing U.S. PAT. & TRADEMARK OFF., MANUAL OF PATENT EXAMINING PROCEDURE § 1206 (8th ed. 2001)); *see also Hyatt v. Dudas*, 399 F. Supp. 2d 1, 7–8 (D.D.C. 2005).

The PTO concedes that the first requirement has been met, Def.'s Br. at 12, but disagrees with Hyatt regarding whether Hyatt sufficiently argued for the separate patentability of his claims, thus assertedly failing to meet the second requirement. Notably, the parties disagree as to what is required to meet the second requirement contained in Rule 192(c)(7). The PTO reads the regulation to require that the applicant "explain why *each individual claim* is separately patentable." Def.'s Br. at 6 (emphasis added). An applicant can do this, according to the PTO, by presenting "substantive argument about why each claim overcomes the rejection(s) made against it and is separately patentable." *Id.* at 7. At its core then, the PTO's interpretation of Rule 192(c)(7) requires that, if the applicant wants the Board to review each claim separately, the applicant must argue each claim separately.

Hyatt disagrees, insisting that the language of Rule 192(c)(7) does not require "a claim-by-claim analysis in order to pass muster under the Rule." Pl.'s Opp'n at 9–10. Rather, Hyatt asserts that he satisfied the requirements for arguing separate patentability by "analyzing each disputed claim limitation and then identifying which claims recited that claim limitation." *Id.* at 16. He suggests that the claim limitation listings could have been combined with the subject matter arguments made throughout his appellate briefs to "provide a conceptual matrix" that "*in effect* provides a separate argument for the claim elements in each claim, but without repeating the same argument over and over again for each claim having a common claim limitation." *Id.* at 20 (emphasis added). Hyatt insists that this was a "logical, practical and reasonable means of satisfying the requirements of Rule 12(c)(7)." Pl.'s Surreply at 6.[3]

---

[3] It should be noted that Hyatt's method of creating this "conceptual matrix" is far from straightforward and requires a substantial amount of effort to determine which subject matter arguments apply to which claims. Using the '521 application as an example, in his "Summary of

Ultimately, the court disagrees with the PTO that a claim-by-claim argument is necessarily required under the plain language of the rule. Rule 192(c)(7) requires that the "appellant explain[] why the claims of the group are believed to be separately patentable." Nowhere in this language is there a requirement that such explanation be done on a claim-by-claim basis, and the court declines to manufacture such language now. Nonetheless, by explicitly providing that "[m]erely pointing out differences in what the claims cover is not an argument as to why the claims are separately patentable," the rule certainly anticipates that not just any argument will suffice to require the Board to review an applicant's claims separately. Rather, the appellant is expected to make an argument that adequately addresses the reasons for separate patentability, thereby rebutting the presumption in favor of grouping. For the following reasons, Hyatt failed to do so and, accordingly, the Board did not err by reviewing only representative claims.

First, although Hyatt argues that a claim-by-claim argument for separate patentability would be redundant and inefficient, his solution—the "conceptual matrix" approach linking subject matter arguments with corresponding claims—fails to show that grouping claims was inappropriate and, moreover, inadvertently gives greater support for such grouping. It is well established that patentability of a claim requires reading the claim in its entirety. *See In re Gulack*, 703 F.2d 1381, 1385 (Fed. Cir. 1983) ("The claim must be read as a whole."); *Ricoh Co. v. Katun Corp.*, 380 F. Supp. 2d 418, 423 (D.N.J. 2005) ("A claim must be read as a whole,

---

Separate Claims Argument" Hyatt disputes the written description rejection of the "filter" limitation. *See* Pl.'s Opp'n, Ex. 13, at 3. To determine the claims in which this limitation appears, however, a reader of Hyatt's brief would have to consult the "Different Claim Limitations in the Instant Application" exhibit and go through 311 claims one by one to check if that limitation appears therein. *See* Pl.'s Mot.*,* Ex. 24, at Tab 6.

rather than element by element."). By arguing separate patentability of each claim by simply inserting various generically argued limitations into each claim, Hyatt does not address claim limitations within the context of each separate claim and therefore does not address why each claim as a whole is separately patentable. *Cf. In re Hiniker*, 150 F.3d 1362, 1368 (Fed. Cir. 1998) ("Although [appellant's] submissions are extensive and its arguments are otherwise persuasive, neither is connected to the broad claims [he] seeks to secure.").

Moreover, by admitting that a subject matter-based approach adequately addresses the rejections at issue, Hyatt implicitly concedes the appropriateness of grouping his claims. If each limitation may be addressed on a general basis without contextualization in specific claims, rejected claims having such limitations must therefore be conceded as having been validly rejected for reasons generally applicable across all claims, despite the differences as to the remaining limitations. *Cf. In re Battiston*, 2005 U.S. App. LEXIS 14303, at *8 (Fed. Cir. July 15, 2005) (finding Board's grouping of claims proper where appellant argued "each of the original four rejections, not the claims, separately"). These commonly applicable grounds for rejection of Hyatt's claims thus justify the Board's corresponding grouping of claims and strongly undermines Hyatt's argument for separate patentability. *See In re McDaniel*, 293 F.3d at 1383 ("For example, if two commonly rejected but patentably distinct claims are considered by an applicant to be patentably distinguishable over the cited art for reasons applicable to both claims, there is no reason why the Board, or an applicant for that matter, should have to be concerned with the distinctions between the claims themselves in the rejected group.").

Finally, for the two applications for which Hyatt did argue separate patentability on a claim-by-claim basis,[4] Hyatt's arguments, although extensive, do little more than list differences in what each claim covers and make unsupported conclusory arguments for wrongful rejection. For example, Hyatt cites to the following argument in his '072 Supplemental Brief as representative:

> Claim 98 recites the following novel combination of contested limitations that distinguishes the reference and that is separately patentable over the combinations recited in the other claims: a first memory storing input image information, a spatial filter circuit generating output spatially filtered image information, a second memory, a second memory input circuit inputting spatially filtered image information, an undersampling circuit, a spatial interpolation circuit, a temporal interpolation circuit, a communication link communicating output image information, a display circuit, and a display device displaying an image.  Neither the art rejections nor the double patenting rejection establish motivation for the combination of the references, nor obviousness of the recited cooperation between the limitations in this claim.  Further the § 112-1 rejections do not establish why the express disclosure of the limitations in this claim does not satisfy § 112-1.  Still further, neither the art rejections nor the double patenting rejection establish what in the reference is relied on to establish obviousness of each of the recited limitations in this claim: e.g., filter, interpolation, spatial, temporal, temporal interpolation, and undersampling type limitations.  Further, the rejections fail to establish the required *prima facie* case and fail to provide the required "substantial evidence" to support the rejections of this claim.

Pl.'s Mot., Ex. 12, at 33 (internal citations omitted).

The first part of the argument merely states what the limitations of that claim are.  As expressly indicated by Rule 192(c)(7), this is not sufficient to preclude grouping of claims.  *See* 37 C.F.R. § 1.192(c)(7) ("Merely pointing out differences in what the claims cover is not an argument as to why the claims are separately patentable.").

---

[4] Hyatt submitted these claim-by-claim arguments in response to a Notice of Non-compliance issued by the Examiner.

11

While the second part of Hyatt's claim-specific argument does acknowledge the particular grounds for rejection, it only does so through broad denials of the propriety of these rejections and does not state *why* they are improper. Although Hyatt argues that the threshold for sufficiently arguing separate patentability is quite low, his reliance upon *In re Watts*, 354 F.3d 1362 (Fed. Cir. 2004), for this proposition is misplaced. In *Watts*, appellant's claims 17–21 and 23 were rejected as obvious over a combination of three prior patents. Because the appellant argued that this combination did not disclose the "critical I/O limitations" present in claims 21 and 23 but not in claims 17–20, the court found the Board's grouping of all five claims improper. *Id*. at 1368–69. Although the arguments for separate patentability in *Watts* were not extensive, they nevertheless provided a specific reason why the claims should not be grouped together, namely that the patentability of two claims involved a limitation not addressed by the prior art over which it was rejected. By contrast, Hyatt provides no specific reason why any claim should be considered apart from other claims with a common ground of rejection.

For these reasons, Hyatt failed to meet his burden of establishing the second requirement of Rule 192(c)(7), for he did not present adequate *argument* as to why the claims were separately patentable. Consequently, the Board did not err when it chose to group Hyatt's claims.

**B.  Waiver**

As noted above, the Examiner issued Notices of Non-compliance in two of Hyatt's twelve appeals, informing him that, although he had stated that his claims did not stand or fall together, he had failed to include "any separate discussion of the separate patentability of ANY individual claim." Pl.'s Mot., Ex. 11, at 3 (capitalization in original). Hyatt argues that, by failing to issue such notices for the remaining ten appeals, the Examiner implicitly conceded that

Hyatt had included adequate discussion of the separate patentability of his claims in those appeals. Accordingly, Hyatt insists that the PTO waived any right to group his claims in ten of his twelve appeals. For the following reasons, the court disagrees.

Under 37 C.F.R. § 1.192(d), the Examiner was required to notify Hyatt if his brief did "not comply with all the requirements of paragraph (c)" of that Rule—the paragraph dealing with grouping of claims by the Board on appeal—and permit him to file an amended brief. While Hyatt cites a number of cases for the proposition that an Examiner's failure to issue a Notice of Non-compliance can bind the Board and preclude it from grouping claims under Rule 192(c)(7), Pl.'s Br. at 11 (citing *Ex parte Schier*, 21 U.S.P.Q.2d 1016 (Bd. Pat. App. & Inter. 1991) and *Ex parte Ohsumi*, 21 U.S.P.Q.2d 1020 (Bd. Pat. App. & Interf. 1991)), these cases are inapposite for they all involve situations wherein the applicant failed to make *any* argument for separate patentability. Here, however, Hyatt made such an argument, albeit an unconvincing one. The PTO's Manual of Patent Examining Procedure specifically distinguishes these two scenarios, stating:

> [In reviewing the contents of an appellate brief] a distinction must be made between the lack of any argument and the presentation of arguments which carry no conviction. In the former case, notification of a defective appeal brief [by the Examiner] is in order, while in the latter case, the application or reexamination is forwarded to the Board for a decision on the merits.

U.S. PAT. & TRADEMARK OFF., MANUAL OF PATENT EXAMINING PROCEDURE § 1206 (8th ed. 2001, rev. May 2004). Accordingly, where an appellant's brief is facially consistent with Rule 192(c)(7)—i.e., there is a statement that claims do not stand or fall together and *an* argument for separate patentability—the Examiner need not issue a Notice of Non-compliance and, accordingly, does not bind the scope of the Board's review by failing to do so. Here, because

Hyatt included some argument for the separate patentability of his claims, his brief was not non-compliant with the rules and the Examiner was not required to provide him the opportunity to amend his briefs.

Moreover, the PTO regulation in effect at the time of Hyatt's appeal, as well as relevant case law decided after *Schier* and *Ohsumi*, make clear that the authority to substantively evaluate an appellant's arguments for separate patentability lies with the Board, not the Examiner. First, the language of the regulation governing this case states that "*the Board* shall select a single claim from the group and shall decide the appeal as to the ground of rejection," 37 C.F.R. § 1.192(c)(7) (emphasis added), whereas the rule in effect at the time *Schier* and *Ohsumi* were decided did not explicitly place this determination with the Board. *See id.* § 1.192(c)(5) ("For each ground of rejection which appellant contests and which applies to more than one claim, it will be presumed that the rejected claims stand or fall together."). The insertion of "the Board" into the regulation clarifies any ambiguous division of responsibilities that may have remained under the former "it will be presumed" language.

Furthermore, the Federal Circuit, in *In re McDaniel*, accorded the Board unqualified authority to group claims in accordance with Rule 192(c)(7) without mention of any limitations stemming from the Examiner's finding of compliance or non-compliance with that rule. *In re McDaniel*, 293 F.3d at 1383 ("The rule acts as the default that permits *the Board* to designate one claim to serve as representative . . .") (emphasis added); *Id.* ("If the brief fails to meet either requirement, *the Board* is free to select a single claim . . .") (emphasis added).

Given these, the court cannot agree with Hyatt that the Examiner's failure to issue a Notice of Non-compliance in ten of the twelve appeals had any binding effect upon the Board's

14

ability to select representative claims, for the ultimate authority on the merits of Hyatt's brief lay with the Board. Although it is admittedly surprising that the Examiner chose to issue Notices of Non-compliance in two appeals but not in other similar ones, the Examiner's inconsistency cannot constrain the Board's discretion.

## C. Equitable Principles

Noting that § 145 actions are rooted in a bill of equity, Hyatt urges the court to consider all of his claims for two "equitable" reasons: (1) because the Examiner's issuance of Notices of Non-compliance for only two of the twelve applications denied him adequate notice of deficiency; and (2) because the PTO's elimination of former Rule 192(c)(7) due to confusion in its application requires leniency towards Hyatt's good faith attempt at compliance. Pl.'s Br. at 24–27.

First, Hyatt insists that the Examiner's failure to provide a Notice of Non-compliance in ten of the twelve applications "served to create added confusion regarding the PTO's interpretation and implementation of the Rule." *Id.* at 27. The inconsistent use of the Notice of Non-compliance for Hyatt's applications is, according to Hyatt, "nothing short of unconscionable." *Id.* Ultimately though, as discussed above, when given the chance to amend his appeal briefs in the two matters in which the Examiner *did* issue Notices of Non-compliance, Hyatt still failed to meet his burden of arguing for the separate patentability of his claims. Accordingly, the court does not agree that any unfairness resulted from Hyatt's not being given the opportunity to amend his briefs in the other ten appeals.

With regard to his second equitable argument, Hyatt comments that Rule 192(c)(7) is "not a model of clarity," *id.* at 26, an assertion with which the PTO has agreed in the past. *See* 69

15

Fed. Reg. 49960, 49962–63 (Aug. 12, 2004) (noting that Rule 192(c)(7) has "led to many problems" for appellants and Examiners).[5]  Given the "admitted problems with former Rule 192," Hyatt insists that "it would be unfair to penalize [him] where he at least made a good-faith effort to comply with the PTO's confusing requirement."  Pl.'s Br. at 26–27.  Many litigants, however, are bound by laws and regulations that they believe are ambiguous.  Such ambiguity does not, in this court's opinion, merit the equitable relief that Hyatt seeks.[6]

**D. Proper Grouping of Claims by the Board**

Lastly, Hyatt contends that, even if the Board was entitled to group together his claims under Rule 192(c)(7), its selection of representative claims was improper.  Specifically, Hyatt argues that the Board erred by selecting as representative only those claims that were discussed in the "Summary of the Invention" section of his appeal brief.  Instead, he insists that the Board was required to group claims according to the common ground of rejection relied on by the Examiner and to select a representative claim for each grouping.  The court agrees.

Rule 192(c)(7) requires that claims be grouped on appeal by common ground of rejection. *See* 37 C.F.R. § 1.129(c)(7) ("For each ground of rejection which appellant contests and which applies to a group of two or more claims . . . .").  The PTO does not disagree that it was required

---

[5] For this reason, the PTO replaced Rule 192(c)(7) and supplanted it with 37 C.F.R. § 41.37(c)(1)(vii) ("Rule 41.37(c)(1)(vii)"), a regulation that clarifies the burden on an appellant who wishes to avoid the grouping of claims.  Specifically, Rule 41.37(c)(1)(vii), unlike Rule 192(c)(7), explicitly requires an appellant to argue separate patentability on a claim-by-claim basis in order to avoid grouping by the Board.  *See* 37 C.F.R. § 41.37(c)(1)(vii) ("Any claim argued separately should be placed under a subheading identifying the claim by number.  Claims argued as a group should be placed under a subheading identifying the claims by number.").

[6] The PTO also argues that Hyatt does not deserve equitable relief because he has "abus[ed] the spirit of the rules of patent prosecution."  Def.'s Opp'n at 33.  The court takes no position on these allegations.

to group claims by common ground of rejection, but instead argues that a common ground of rejection is "defined not by claim limitations, as Mr. Hyatt argues, but rather by the statutory basis for rejection." Def.'s Reply at 6.[7] This argument is contradicted by Federal Circuit precedent. In *In re McDaniel*, the Federal Circuit clarified that, when selecting representative claims, the Board may not "ignore the distinctions between separate grounds of rejection and select the broadest claim rejected on one ground as a representative of a separate group of claims subject to a different ground of rejection." *In re McDaniel*, 293 F.3d at 1384. Rather, the Board is required to group claims together such that the distinctions between the claims are "of no patentable consequence to a contested rejection." *Id.* at 1383–84.[8]

Applying these principles, the Federal Circuit noted that certain of the claims at issue in *In re McDaniel* shared a common ground of rejection when they "were rejected over some of the same references *and* under the same statutory provision." *Id.* at 1384 (emphasis added). Given

---

[7] The PTO also argues that Hyatt waived any right to have other representative claims reviewed by the Board by failing to argue those claims in his appeal briefs. This argument is inconsistent with *In re McDaniel*, where the applicant was held to have "waived" the separate argument of his claims, yet nonetheless had the right to have "each grounds of rejection relied on by the Examiner reviewed independently by the Board." *In re McDaniel*, 293 F.3d at 1384.

[8] The court recognizes that *In re McDaniel* is not a perfect parallel to this case in that the rejections at issue in *In re McDaniel* were due to the presence of prior art, whereas here the rejections were primarily for lack of written description. As Hyatt notes, "a written description rejection is the converse of a prior art rejection." Pl.'s Surreply at 10. Specifically, in the case of a prior art rejection, the elements of the claims *are* disclosed by the cited reference. However, a written description rejection involves a very different showing that the elements *are not* disclosed by the specification. This distinction has very real consequences when it comes to grouping under Rule 192(c)(7), consequences that the PTO fails to appreciate.
  The court agrees with Hyatt that the question of adequate disclosure of one claim limitation, such as an input circuit, has a "different patentable consequence" than the disclosure of a different limitation, such as a processor. Given this difference, the Board should not have grouped claims that have been rejected for lack of a written description unless those claims share a limitation that has been found to have not been disclosed by the specification.

17

this explicit recognition that proper grouping requires more than that the claims share the same statutory basis for rejection, the court cannot agree with the PTO's argument to the contrary.[9]

To demonstrate how the Board erred, the court will focus on one exemplar application—the '549 application. There, the Examiner's rejection provided thirteen separate claim groupings, each relating to a separate and distinct claim limitation that allegedly was not supported by the written description in the application. *See* Pl.'s Opp'n, Ex. 27, at 20. On appeal, the Board failed to focus on these claim groupings, instead selecting one claim from the Summary of the Invention section of the appeal brief to serve as the sole representative claim. *See* Pl.'s Opp'n, Ex. 12, at 3–5. Doing so was improper because that representative claim failed to share a common ground of rejection with many of the claims it purported to represent. Instead, as the Federal Circuit has made clear, the Board was required to group claims together such that the distinctions between the claims were "of no patentable consequence." *Id.* at 1383–84.[10] In sum, the Board's use of one claim as representative of a large number of claims whose sole similarity is that they were rejected under the same statutory provision is contrary to binding case law.

---

[9] As Hyatt correctly notes, this conclusion is strengthened by the internal PTO guidelines, which provide that the "ground of rejection" for an applicant's patent claim must include both "the statutory basis for any ground of rejection," as well as "the reason" for the rejection. *See* U.S. PAT. & TRADEMARK OFF., MANUAL OF PATENT EXAMINING PROCEDURE § 707.07(d) (8th ed. 2001, rev. May 2005)

[10] However, contrary to Hyatt's argument, *In re McDaniel* does not require the Board to choose a representative claim for each claim group rejected by the Examiner. In *In re McDaniel*, the Federal Circuit affirmed the Board's use of claim 53 as representative of claims 61–63, even though claim 53 has not been rejected together with claims 61–63. *In re McDaniel*, 293 F.3d at 1384.

The Board's failure to evaluate a number of representative claims that it should have has "left this court without an adequate record" to review. *Hyatt*, 393 F. Supp. 2d at 13.  The appropriate remedy therefore is to remand the case to the PTO for further proceedings consistent with this opinion, and to allow them to determine, in the first instance, the proper grouping of claims.  Remand is a common remedy in patent cases where the Board errs.  *See In re Beaver*, 893 F.2d 329, 330 (Fed. Cir. 1989) (remanding to the PTO after determining that the Board erred in grouping claims); *Hyatt*, 393 F. Supp. 2d at 13 (remanding to the PTO after concluding that the Board erred in determining that the Examiner's rejections established a *prima facie* case).  Moreover, the "application of Patent Office expertise in the first instance may either obviate the need for judicial consideration, or illuminate the issues and facilitate the court's disposition." *DeSeversky v. Brenner*, 424 F.2d at 857, 859 (D.C. Cir. 1970).

### III.  CONCLUSION

Accordingly, this matter is remanded to the PTO.  An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge

Dated: August 30, 2006